## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA

LIBERTY PROPERTY LIMITED PARTNERSHIP,

    Plaintiff,

v.

PROCRAFT CABINETRY, INC.,

    Defendant/Third-Party Plaintiff,

v.

HUI "SOPHIA" CHEN and JIAN "JACK" HUANG,

    Third-Party Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Civil Action File
No.: 1:19-cv-02830-MLB

### THIRD-PARTY DEFENDANTS' ANSWER
### TO THIRD PARTY COMPLAINT

Comes Now, Third-Party Defendants, Hui "Sophia" Chen ("Sophia"), and Jian "Jack" Huang ("Jack"), by and through the undersigned counsel, and files this Answer to Third-Party Plaintiff ProCraft Cabinetry, Inc.'s ("ProCraft") Third-Party Complaint. In response, Third-Party Defendants would answer each paragraph as follows:

1. Denied that any of the alleged actions taken were fraudulent. Sophia and Jack would show that they acted in accordance with how ProCraft, Sophia and Jack had operated since 2014.

1

2. Admit.

3. Admit.

4. Admit.

5. Denied.

6. Admit.

7. Amit that Sophia is one of three shareholders in ProCraft. Admit that a document entitled Shareholders Agreement was signed by the three shareholders on or about November of 2014. Sophia would deny that the Shareholders Agreement was controlling through the practice of the shareholders. Sophia would show that the other two shareholders never participated in the operation of ProCraft. Sophia would further show she operated ProCraft individually since November of 2014. Sophia would further show that the other two shareholders never paid ProCraft for their shares and as such they violated the Shareholder's Agreement. Sophia would allege that the Shareholder's Agreement was not valid and was not controlling. Admit that Jack is not a shareholder.

8. Denied. See reasons set forth in Paragraph 7.

9. Denied. Jack was an officer of ProCraft.

10. Admit that the Shareholder's Agreement states what is alleged. However, Sophia denies that ProCraft and the Shareholders ever operated under

the Shareholder's Agreement and incorporates the additional responses set forth in Paragraph 7.

11. Denied.

12. Denied. It is admitted that Peter and Jackey's access to emails was removed in light of their actions to among other things, creating their own websites using the ProCraft logo with their own address, creating competing businesses against ProCraft and their notice to all customers to no longer send emails to ProCraft.

13. Denied. It was Sophia's understanding that the lawsuit was to prove that the Shareholders Agreement was invalid and also demand payment from Peter and Jackey for products and inventory that they purchased and never paid for in the amount of approximately $3,936,975.00.

14. Denied.

15. Denied.

16. Denied that any activity was illegal. Admit that Sophia and Jack did sign the leases subject to this Complaint.

17. Admit that Judge Waverly Crenshaw granted summary judgment to Peter and Jackey in the matter referred to in the Middle District of Tennessee. Deny that such ruling is directly applicable to this matter as Judge Crenshaw was reviewing whether or not Sophia could cause a lawsuit to be brought without

approval of the other two shareholders. In addition, Judge Crenshaw did not review the validity of the Shareholders Agreement in terms of the previous course of conduct of the parties or whether the Shareholders Agreement was valid without contribution from the other two parties of the Agreement.

18. Admit that the Order states what the Order states. Deny that such ruling is directly applicable to this matter as Judge Crenshaw was reviewing whether or not Sophia could cause a lawsuit be brought without the other two shareholders. In addition Judge Crenshaw did not review the validity of the Shareholders Agreement and the previous course of conduct of the parties or whether the Shareholders Agreement was valid without contribution from the other two parties of the Agreement.

19. Admit that shareholders, partners and officers in a closely held company owe a fiduciary duty to each other.

20. Denied as alleged. Jack was an officer of ProCraft. However, admit that as an officer of ProCraft, Jack owed a fiduciary duty and duty of loyalty to ProCraft.

21. Denied.

22. Denied.

23. Denied.

24. Denied.

25. Denied.

26. Denied.

27. Admit that the Shareholders Agreement was executed by the three parties. However, deny the validity of the Agreement.

28. Admit that the Shareholders Agreement states what it purports to state but deny the validity of the Agreement.

29. Admit that the Shareholders Agreement states what it purports to state, but deny the validity of the Agreement.

30. Admit.

31. Admit. Sophia believed that she was the sole Shareholder and had the authority to enter into the Original Lease and Additional Lease. Between November 2014 and the signing of the leases in question, Sophia had operated ProCraft without any input or communication with the Third-Party Plaintiffs and had purchased millions of dollars in inventory and equipment. At any time between November 2014 and the signing of the leases in question, the Third-Party Plaintiffs could have and should have informed Sophia that she was violating the Shareholders Agreement that she did not know about.

32. Denied.

33. Admit to the extent that as of the signing of the leases in questions, there was a Shareholders Agreement signed by Sophia and Third-Party Plaintiffs.

Denied to the extent that Sophia believed that she had to have majority shareholder approval to execute the Additional Lease. Sophia believed that she was the sole Shareholder and had the authority to enter into the Original Lease and Additional Lease. Between November 2014 and the signing of the leases in question, Sophia had operated ProCraft without any input or communication with the Third-Party Plaintiffs and had purchased millions of dollars in inventory and equipment. At any time between November 2014 and the signing of the leases in question, the Third-Party Plaintiffs could have and should have informed Sophia that she was violating the Shareholders Agreement that she did not know about.

Denied further to the extent that the Shareholders Agreement was valid and enforceable.

34. Denied.

35. Denied.

36. Admit that the Shareholders Agreement states what it purports to state, but deny the validity of the Agreement.

37. Admit that the Shareholders Agreement states what it purports to state, but deny the validity of the Agreement.

38. Admit.

39. Admit. Sophia believed that she was the sole Shareholder and had the authority to enter into the Original Lease and Additional Lease. Between

November 2014 and the signing of the leases in question, Sophia had operated ProCraft without any input or communication with the Third-Party Plaintiffs and had purchased millions of dollars in inventory and equipment. At any time between November 2014 and the signing of the leases in question, the Third-Party Plaintiffs could have and should have informed Sophia that she was violating the Shareholders Agreement that she did not know about.

40. Denied.

41. Denied.

42. Denied.

43. Denied.

44. Denied.

45. Denied.

46. Denied.

47. Denied.

48. Denied.

49. Denied.

50. Denied.

51. Denied.

52. Denied.

53. Denied.

54. Denied.

55. Denied.

56. Denied.

57. Denied.

58. Denied.

59. Denied.

60. Denied.

61. Denied.

62. Denied.

63. Denied.

64. Denied.

65. Denied.

66. Denied.

67. Denied.

68. Denied.

69. Denied.

70. Denied. While Sophia admits that an executed Shareholders Agreement exists, Sophia denies that it was valid and controlling.

71. Admit.

72. Admit.

73. Paragraph 73 calls for a legal conclusion and is not either admitted or denied.

74. Paragraph 74 calls for a legal conclusion and is not either admitted or denied.

75. Admit.

76. Denied.

## AFFIRMATIVE DEFENSES

1. The Shareholder Agreement relied on by Third-Party Plaintiffs is invalid. Based on the course of operation and conduct of the parties from November 2014 to present, Third-Party Plaintiffs allowed Sophia to make all operational decisions on behalf of ProCraft, including all decisions involving amounts over $5,000.00. Third-Party Plaintiffs were aware of such decisions and never objected to allowing Sophia to make such decisions, including leases signed with Procraft Seattle, ProCraft, Dallas and ProCraft Houston. After execution of the Shareholders Agreement, Sophia continued to run the ProCraft operations as she had for years before as its sole shareholder.

2. The Shareholder Agreement is invalid and first breached by Third-Party Plaintiffs. Pursuant to the terms of the Shareholders Agreement, Peter and Jackey were to pay two (2) million dollars for their joint 50% share of ProCraft. Peter and Jackey never contributed the amounts agreed to and such shares were

never transferred to Peter and Jackey. Peter and Jackey never became shareholders of ProCraft.

3. Third-Party Plaintiffs have unclean hands and are not entitled to the relief requested. Third-Party Plaintiffs have admitted that they believed the Shareholders Agreement was for a new company, which was never formed, and not ProCraft.

4. Third-Party Plaintiffs claims are barred pursuant to the doctrine of equitable estoppel. If Third-Party Plaintiffs now believe that they are ProCraft Shareholders, they waited years to make this assertion. They remained silent and said nothing regarding Sophia's ownership and operation of ProCraft and Sophia's actions to enter into the leases was in the best interest of ProCraft.

5. Third-Party Plaintiffs' claims are barred by the doctrine of unjust enrichment. Third-Party Plaintiffs allowed Sophia to operate ProCraft from November 20, 2014 (date of execution of the Shareholders Agreement) until October 2018 without one single objection. During this time Sophia conducted millions of dollars in transactions including the buying of inventory and equipment, without objection from the Third-Party Plaintiffs. Upon their takeover of ProCraft, the Third-Party Plaintiffs proceeded to empty the warehouses and removed all of the inventory and equipment. This was the same inventory and equipment purchased by Sophia for ProCraft. In essence the Third-Party Plaintiffs

now choose to accept or refuse the decisions and actions by Sophia which they allege violate the Shareholders Agreement. The Third-Party Plaintiffs cannot reap the benefits of the assets while refusing to take the liabilities.

6. Third-Party Plaintiffs claims are barred by laches.

7. Third-Party Plaintiffs have failed to mitigate any alleged damages. The leases complained of were in good standing when Third-Party Plaintiffs assumed control of ProCraft. Third-Party Plaintiffs allowed the leases to go into default resulting in any alleged damages. Instead of honoring the leases, Third-Party Plaintiffs proceeded to remove all ProCraft equipment and inventory from the leased facilities and moved to another facility not owned or leased by ProCraft.

WHEREFORE, Third-Party Defendants having answered the Third-Party Complaint, deny that they are liable to Third-Party Plaintiffs or Plaintiff in any amount, and request the Court dismiss the claims against Third-Party Defendants with costs taxed against Third-Party Plaintiffs and any further relief this Court deems fit and proper.

Respectfully submitted,

s/ Jonathan Jackson Pledger
Jonathan Jackson Pledger
Georgia Bar No.: 581855
219 Third Avenue North
Franklin, Tennessee 37064
615-479-3011 – Telephone
615-823-2937 – Facsimile
jjpledger@comcast.net

## CERTIFICATE OF SERVICE

I hereby a true and exact copy of the foregoing Response to Third-Party Complaint was served on all parties to the above-caption via U.S. Mail, postage pre-paid to:

John W. Jordan, Esq.
Hecht Walker, P.C.
205 Corporate Center Drive, Suite B
Stockbridge, GA 30281

Brian P. Watt, Esq.
Troutman Sanders, LLP
Bank of America Plaza, Suite 3000
600 Peachtree Street, NE
Atlanta, GA 30308-2216

Furthermore, I electronically file the forgoing Response to Third-Party Complaint with the CM/ECF e-fling system, which will automatically send email notification of such filing to the following attorneys of record:

Jon W. Jordan, Esq.
jon@hmhwlaw.com

Brian P. Watt, Esq.
Brian.watt@troutman.com

On this 13th day of September 2019.

s/ Jonathan Jackson Pledger
Jonathan Jackson Pledger
Georgia Bar No.: 581855
219 Third Avenue North
Franklin, Tennessee 37064
615-479-3011 – Telephone
615-823-2937 – Facsimile
jjpledger@comcast.net